THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No: 2:23-CV-00058-BO-BM

CENTER FOR BIOLOGICAL DIVERSITY, )
)
       Plaintiff, )
)
       v. )
)
WALTER CRUIKSHANK, Acting Secretary )
of the Interior; and PAUL SOUZA,[1] exercising )
the delegated authority of the Director of U.S. )
Fish and Wildlife Service, )
)
       Defendants. )

**DEFENDANTS' COMBINED
MEMORANDUM IN SUPPORT OF
DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO
PLAINTIFF'S MOTION**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Walter Cruikshank, Acting Secretary of the Interior, is automatically substituted for Debra Haaland; and Paul Souza, Regional Director, Region 8, exercising the delegated authority of the Director of the Fish and Wildlife Service, is automatically substituted for Martha Williams.

# TABLE OF CONTENTS

NATURE OF THE CASE ............................................................................................. 1

STATUTORY BACKGROUND ................................................................................... 2

FACTUAL BACKGROUND ......................................................................................... 4

    I.    Red Wolf Experimental Population History ...................................................... 4

    II.   The Service's Recent Recovery Efforts ............................................................. 5

    III.   Plaintiff's Petition and the Service's Response ............................................... 6

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ................................................................................................................. 8

    I.    The Service reasonably declined to revise the red wolf 10(j) rule to reclassify the ENC RWP as "essential." ............................................................................................ 8

        A.   Plaintiff's challenge to the Service's petition denial largely acts as an attempt to challenge the Service's 1986 essentiality designation for the ENC RWP. ............................. 8

        B.   The Service provided Plaintiff a "brief statement of the ground for denial" of Plaintiff's petition consistent with the requirements of the APA. ......................................... 9

        C.   The Service reasonably relied on the Service's previous consideration of the captive population of red wolves in its 1986 essentiality determination when it denied Plaintiff's petition. ............................................................................................................. 12

        D.   The Service did not consider improper factors ............................................. 14

        E.   Plaintiff's petition contained no information in support of its request to reclassify the ENC RWP, and Plaintiff's newly cited studies do not support their claims......................... 17

II.   The Service reasonably denied revising 50 C.F.R. § 17.84(c)(4)(v) ................................ 19

REMEDY ................................................................................................................ 22

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Statutes and Regulations**

5 U.S.C. § 553 ................................................................................ 6

5 U.S.C. § 555 ................................................................. 6, 7, 10, 12

5 U.S.C. § 706 ................................................................................ 7

16 U.S.C. § 1531 ...................................................................... 2, 4, 12, 20

16 U.S.C. § 1536 ............................................................................ 4

16 U.S.C. § 1539 ....................................................... 2, 3, 10, 11-12, 15

28 U.S.C. § 2401 ............................................................................ 9

49 Fed. Reg. 33885 (Aug. 27, 1984) ................................... 3, 13-14, 16

50 C.F.R. § 17.80 ................................................................. 2, 4, 5, 6, 13

50 C.F.R. § 17.81 ............................................................................ 3

50 C.F.R. § 17.84 ........................................................ 4, 6, 18, 19, 20, 21, 22

50 C.F.R. § 222.502 ........................................................................ 3

51 Fed. Reg. 26564, 26565 (July 24, 1986) ................................... 3

51 Fed. Reg. 41790 (Nov. 19, 1986) ........................................... 4, 14

**Cases**

*Ark Initiative v. Tidwell*,
   749 F.3d 1071 (D.C. Cir. 2014) ........................................... 11

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*,
   462 U.S. 87 (1983) ............................................................... 7

*Center for Biological Diversity v. Jewell*,
   No. CV-15-00019-TUC-JGZ (l) 2018 U.S. Dist. LEXIS 56436  (D. Ariz. Mar. 31, 2018)  . 11, 20

*Compassion Over Killing v. U.S. FDA*,
   849 F.3d 849 (9th Cir. 2017) ........................................... 12, 13

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*
   603 U.S. 799 (2024) ............................................................... 9

iv

*DiGiovanni v. FAA*,
  249 Fed. App'x 842 (2d Cir. 2007) ............................................................... 9, 19

Federal Rule of Civil Procedure 25 .................................................................... i

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ........................................................................................... 22

*Flyers Rts. Educ. Fund, Inc. v. FAA*,
  864 F.3d 738 (D.C. Cir. 2017) .......................................................................... 7, 8

*Friends of Back Bay v. U.S. Army Corps of Eng'rs*,
  681 F.3d 581 (4th Cir. 2012) ............................................................................... 7

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ...................................................................................... 10, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................................. 16

*Nat. Res. Def. Council, Inc. v. U.S. EPA*,
  824 F.2d 1146 (D.C. Cir. 1987) ........................................................................... 9

*NLRB v. Fed. Lab. Rels. Auth.*,
  834 F.2d 191 (D.C. Cir. 1987) ........................................................................ 9, 10

*Ohio Valley Env'tl. Coal. v. Aracoma Coal Co.*,
  556 F.3d 177 (4th Cir. 2009) ............................................................................. 19

*Palisades Gen. Hosp. Inc. v. Leavitt*,
  426 F.3d 400 (D.C. Cir. 2005) ........................................................................... 23

*PPG Indus. v. United States*,
  52 F.3d 363 (D.C. Cir. 1995) ............................................................................. 22

*Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*,
  346 F. Supp. 3d 802 (E.D.N.C. 2018) ............................................. 1, 19-20, 20, 21

*WildEarth Guardians v. U.S. Fish & Wildlife Serv.*
  No. 21-2864 (RDM), 2024 U.S. Dist. LEXIS 159398 (D.D.C. Sep. 5, 2024)...... 11, 14, 15, 16

*WWHT, Inc. v. FCC*,
  656 F.2d 807 (D.C. Cir. 1981) ........................................................................... 17

v

## NATURE OF THE CASE

In the case before the Court today, Plaintiff Center for Biological Diversity relies on outdated concerns detailed in its "emergency petition" for rulemaking that was submitted to the U.S. Fish and Wildlife Service ("Service") pursuant to Section 553(e) of the Administrative Procedure Act ("APA") nearly ten years ago. Despite Plaintiff's attempt to perpetuate outdated assumptions about the Service's management of the Eastern North Carolina Red Wolf Population ("ENC RWP") through its challenge to the Service's denial of its petition, much has changed since Plaintiff petitioned to revise the Endangered Species Act ("ESA") Section 10(j) rule for the red wolf in 2016. The Service has since released dozens of captive-bred red wolves to grow its wild population, issued a comprehensive revised recovery plan, and has reengaged the community to determine how best to achieve recovery goals. Defendants' Affirmative Statement of Uncontested Facts ¶ ¶ 7; 14 ("Defs.' SOF"). Yet Plaintiff threatens to derail this progress with its challenge to the Service's denial of Plaintiff's petition. Worse yet, Plaintiff grounds its arguments in an improper, time-barred attack on the reasoning employed by the Service in its initial 1986 promulgation of the ESA Section 10(j) rule governing the ENC RWP.

Specifically, Plaintiff ignores the highly deferential APA standard of review afforded an agency in responding to a petition for rulemaking and instead invites the Court to improperly impose the standards that apply to judicial review of an agency's final rule. Moreover, Plaintiff's request that the Service revise a specific provision of the red wolf 10(j) rule to reflect this Court's decision in *Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 346 F. Supp. 3d 802 (E.D.N.C. 2018) (*"Red Wolf Coal. II"*) rests on an invalid reading of that case and an outdated application of the red wolf 10(j) rule that the Service no longer adheres to.

Despite Plaintiff's efforts to complicate the issue here, the question before the Court in

1

this case is not whether Plaintiff (or this Court) would make different choices in managing the red wolf population. It is much simpler: whether the Service properly responded to Plaintiff's APA petition to revise the red wolf 10(j) rule. As demonstrated below, the answer is yes. The Service responded to Plaintiff's petition with a reasoned explanation for its denial of each of Plaintiff's requests and properly relied on its own longstanding regulations consistent with the procedures provided by the APA. Accordingly, the Court should uphold the Service's denial of Plaintiff's petition.

## STATUTORY BACKGROUND

The ESA's purpose is to conserve and recover endangered and threatened species and the ecosystems on which they depend. 16 U.S.C. § 1531(b). Once a species is listed as threatened or endangered, ESA Section 10(j) allows the Service to authorize the release of an "experimental population" of that species outside the species' current range if the Service determines that the release will further the species' conservation and the released population is wholly separate geographically from non-experimental populations of the same species. 16 U.S.C. § 1539(j)(1)-(2)(A). Before authorizing the release of an experimental population, the Service must promulgate a regulation – a "10(j) rule" – that identifies the population, determines whether it is essential to the continued existence of an endangered or threatened species, and sets forth the management framework for that population. *Id.* § 1539(j)(2)(B). An "essential experimental population" is one "whose loss would be likely to appreciably reduce the likelihood of the survival of the species in the wild." 50 C.F.R. § 17.80(b). "All other experimental populations are to be classified as non-essential." *Id.*

Prior to 1982, populations of endangered species that were reintroduced into unoccupied portions of their historic range pursuant to the ESA were subject to the same strict protections as

listed species still present within their historic ranges. 51 Fed. Reg. 26564, 26565 (July 24, 1986). But local opposition to reintroduction efforts, driven by concerns about restrictions contained in ESA Sections 7 and 9, rendered these efforts a severely ineffective tool to promote recovery of listed species. *Id.* In response to this issue, Congress amended the ESA to include Section 10(j), which governs "experimental" populations, to afford the Service the option for more management flexibility when reintroducing populations of listed species. *Id.*; *see also* H.R. Rep. No. 97-567, at 34 (1982) (noting how Section 10(j) expands agencies' flexibility). The implementing regulations for 10(j) rules make clear the significance of local support for experimental populations, as they state that 10(j) rules must, "to the maximum extent practicable," represent a cooperative agreement between state and federal agencies and private landowners. 50 C.F.R. § 17.81(d). The Service further emphasized the significance of local support when making essentiality determinations, noting that "a non-essential designation would be the most advantageous to encourage cooperation and should be most actively pursued." 49 Fed. Reg. 33885, 33888 (Aug. 27, 1984).

In terms of what protections are afforded to experimental populations, both essential and non-essential populations are generally treated as a threatened species under the ESA with two exceptions. 16 U.S.C. § 1539(j)(2)(C). First, while the Service may designate critical habitat for essential populations, "[n]o designation of critical habitat will be made for non-essential experimental populations." 50 C.F.R. § 222.502(g). Second, ESA Section 7(a)(2)'s interagency consultation requirements do not apply to non-essential populations unless they occur within the National Park System or the National Wildlife Refuge System. *Id.* § 17.83(a), (b). If a non-essential population occurs outside the National Park or Wildlife Refuge Systems, federal agencies instead must only confer with the Service and the results of such conferences are non-

binding for purposes of ESA Section 7(a)(2). *Id.* § 17.83(b); 16 U.S.C. § 1536.

## FACTUAL BACKGROUND

**I.    Red Wolf Experimental Population History**

Though the red wolf was once common throughout much of the southeastern United States, predator control programs and habitat degradation rapidly decreased its population numbers by the early 20th century. FWS000142. By 1972, the range of the red wolf was limited to a small coastal area in southeast Texas and southwest Louisiana. *Id*. To prevent the species' extinction, the Service established a captive breeding program in 1973 with the intention of reintroducing the species to areas within its historic range. FWS000143. In 1986, once the Service determined it was feasible to successfully reintroduce captive-reared red wolf populations into the wild, the Service established a non-essential experimental population – the eastern North Carolina red wolf population ("ENC RWP") – across several counties on the coast of North Carolina under Section 10(j) of the ESA. 51 Fed. Reg. 41790 (Nov. 19, 1986); 50 C.F.R. § 17.84(c).

Between 1987 and 1994, over 60 adult red wolves were released from the captive population into the ENC RWP, and by 2012, scientists estimated that 100 to 120 red wolf individuals comprised the experimental population in the five-county area of northeastern North Carolina. FWS000143-44. However, the wild population subsequently experienced significant decline until 2020 due primarily to anthropogenic mortality. Defs.' SOF ¶ 2. During this time, mortality from gunshots stemmed mostly from increased coyote presence on private land, as landowners often unintentionallly killed red wolves in the midst of an increased effort to eradicate the growing coyote population. *Id.* ¶ 3. In addition, there was increased backlash from private landowners towards red wolves and the Service's management efforts which led to a loss of access to conduct management on key pieces of private property. *Id.* ¶ 4.

4

However, since a renewal of management actions in 2019, detailed below, the ENC RWP population has experienced an increase. *See id.* ¶¶ 6-10. Between 2020 and 2023, 24 Red Wolves were released and five red wolves were fostered into the ENC RWP. *Id.* ¶ 7. In 2023, a litter of red wolf pups was born in the wild in 2022, and in 2023 another litter was born to the same breeding. *Id.* ¶ 8. Two additional litters were born in the wild in acclimation pens within the ENC RWP in 2023. *Id.* In 2024, one litter was born into the wild and another was born into an acclimation pen to a wild female and captive-born male. *Id.* ¶ 9. As of September 2024, there were 16 known adult/subadult wolves within the ENC RWP, with a total estimated population of 17-19 wolves, and 290 red wolves in the captive population. *Id.* ¶ 10.

## II. The Service's Recent Recovery Efforts

While the Service briefly suspended management activities within the ENC RWP between 2015 and 2018, the Service has since been actively working to implement an array of management actions and to increase public engagement in order to achieve red wolf recovery goals. *See id.* ¶¶ 11-14. Such activities include conducting removal and sterilization of coyotes to prevent hybridization, creation of new breeding pairs within the ENC RWP through translocations and release from the captive population, and pup fostering in the wild. *Id.* ¶ 11. To reduce vehicle mortality within the ENC RWP, electronic message boards are deployed along roads where red wolves are nearby and orange reflective material is affixed to the wolves' bright orange collars to increase visibility at night and to prevent misidentification. *Id.* ¶ 12. The Service has also conducted targeted outreach to landowners close to where red wolves are active and has distributed identification cards that help hunters better distinguish red wolves from coyotes. *Id.* ¶ 13. In addition, the Service has made significant efforts to develop improved approaches for local community engagement, including with local and state governmental entities, Tribal Nations, private landowners, conservation organizations, and scientific

5

researchers. *Id.* ¶ 14.

## III. Plaintiff's Petition and the Service's Response

In 2016, Plaintiff submitted a petition to the Service pursuant to the APA, 5 U.S.C. § 553(e), to revise the red wolf 10(j) rule. FWS000117. Plaintiff's petition requested that the Service amend the rule to designate the ENC RWP as "essential" under Section 10(j) and that the Service remove 50 C.F.R. 17.84(c)(4)(v) from the red wolf 10(j) rule because this provision "has led to private landowners killing even non-offending wolves." FWS000125-26; FWS000128.

In 2023, the Service denied Plaintiff's petition and provided Plaintiff "a brief statement of the grounds for denial" in accordance with 5 U.S.C. § 555(e). *See* FWS000176. The Service first declined to revisit the "essentiality" determination, explaining that, in accordance with ESA Section 10(j), it designated the ENC RWP as "non-essential" in 1986 before the experimental population was introduced because "at that time" the "species was secured in captivity such that the population was not essential to the species' continued existence." FWS000177. In addition, the Service emphasized the benefits of the management flexibilities resulting from the non-essential determination in obtaining public support, and that ESA Section 10(j) was intentionally designed to afford the Service flexibility in order to prevent local opposition to reintroduction efforts. FWS000177-78.

The Service also declined to remove 50 C.F.R. § l7.84(c)(4)(v) from the red wolf 10(j) rule. FWS000179. The Service explained that, in 2018, this Court "permanently enjoined the taking of red wolves, either directly or by landowner authorization, pursuant to 50 C.F.R. [§] 17.84 (c)(4)(v) and (c)(10) without first demonstrating that those red wolves are a threat to human safety or the safety of livestock or pets," and thus § l7.84(c)(4)(v) "no longer provides an allowance for take separate and apart from 50 C.F.R. § 17.84(c)(4)(iii)." FWS000179.

6

**STANDARD OF REVIEW**

Challenges to final agency actions are reviewed pursuant to the APA standard of review, which is "highly deferential" and limited to determining whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 586-87 (4th Cir. 2012). When a case involves review of a complex scientific decision made with the agency's special expertise, "a reviewing court must generally be at its most deferential." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 103 (1983)).

However, this case does not present a challenge to the substance of a final agency rulemaking. Where, as here, an agency has denied a petition for rulemaking, the APA requires the agency to provide only "a brief statement of the grounds for denial" of the petition. 5 U.S.C. § 555(e). As such, judicial review of petition denials is correspondingly "extremely limited" and focused on whether the agency offered a "reasoned explanation" for its denial. *Massachusetts v. EPA*, 549 U.S. 497, 527-28, 534 (2007); *see also Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 919 (D.C. Cir. 2008) ("'[A]n agency's refusal to institute rulemaking proceedings is at the high end of the range' of levels of deference we give to agency action under our 'arbitrary and capricious' review." (citation omitted)). A court's review should turn on whether the agency's petition response "adequately explained the facts and policy concerns it relied on" and a reviewing court should reverse the agency's decision "only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency[.]" *Flyers Rts. Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 743 (D.C. Cir. 2017) (citation omitted).

7

## ARGUMENT

I. **The Service reasonably declined to revise the red wolf 10(j) rule to reclassify the ENC RWP as "essential."**

First, the Service's petition denial provided a clear, reasonable response to Plaintiff's request to revise the red wolf 10(j) rule to reclassify the ENC RWP as "essential" in which the Service "adequately explained the facts and policy concerns it relied on" in making its decision. *Flyers Rts.,* 864 F.3d at 743 (citation omitted). The Service explained that it was declining to revise the ENC RWP essentiality determination because the Service fulfilled its statutory obligation when it designated the ENC RWP as non-essential in 1986 and Plaintiff's petition failed to provide any new information that the status should be revised. FWS000177. In addition, the Service noted that "management flexibilities that result from the non-essential determination are instrumental to support of the red wolf program and ultimately red wolf recovery," but that the population's non-essential legal status should not be misconstrued as indicating a lack of value for the experimental population or the species' recovery. FWS000178. While Plaintiff may disagree with the Service's reasoning, the Service's explanation easily meets the required standard.

A. **Plaintiff's challenge to the Service's petition denial largely acts as an attempt to challenge the Service's 1986 essentiality designation for the ENC RWP.**

As an initial matter, while this case is a challenge to the Service's denial of Plaintiff's petition to revise the red wolf 10(j) rule, Plaintiff's arguments primarily rely on an assertion that the Service's essentiality designation for the ENC RWP was improper even at the time the red wolf 10(j) rule was *initially* promulgated in 1986. Plaintiff is, in effect, challenging the initial 1986 red wolf 10(j) rule itself rather than the Service's 2023 denial of Plaintiff's petition. *E.g.*, DE 28 at 14-15 (describing "the Service's 1986 designation" as "baffling"). But such challenge is statutorily time-barred, and courts have made clear that a challenge to an agency's denial of a

8

petition to revise a rule cannot be used as a front for what is functionally an attack on the existing rule that the petitioner seeks to amend. *See* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.")[2]; *NLRB v. Fed. Lab. Rels. Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987) (review of a denial of a petition to amend an existing rule "does not extend to a challenge of the agency's original action in promulgating the disputed rule" (citation omitted)); *DiGiovanni v. FAA*, 249 Fed. App'x 842, 844 (2d Cir. 2007) (noting that review of a petition denial should not "question[] the [] consequences" of an existing rule that was promulgated pursuant to an agency's statutory authority). Indeed, if a court determines that a challenge to a petition denial functionally serves as a time-barred, "substantive attack" on existing regulations, the court "must dismiss the suit as untimely filed." *Nat. Res. Def. Council, Inc. v. U.S. EPA*, 824 F.2d 1146, 1150 (D.C. Cir. 1987); *see also Nat. Res. Def. Council, Inc. v. U.S. FDA*, 598 F. Supp. 3d 98, 114 (S.D.N.Y. 2022) (barring an "after-the-fact" challenge to existing regulations disguised as a challenge to an agency's denial of a petition for rulemaking). Thus, the Court should not credit Plaintiff's criticism of the Service's 1986 essentiality determination when assessing the sufficiency of the Service's petition denial, which is the sole basis of Plaintiff's Complaint in this case.

**B.** **The Service provided Plaintiff a "brief statement of the ground for denial" of Plaintiff's petition consistent with the requirements of the APA.**

While Plaintiff correctly articulates that the arbitrary and capricious standard of review

---

[2] Defendants acknowledge that the Supreme Court has held that the statute of limitation in 28 U.S.C. § 2401(a) does not necessarily refer to the date of the agency action's promulgation, which, in this case, is 1986. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.* 603 U.S. 799, 814 (2024). However, this concept does not apply here because the Center for Biological Diversity was founded in 1989, and thus even under *Corner Post*, the six-year statute of limitation in 28 U.S.C. § 2401(a) bars Plaintiff from bringing a facial challenge of the 1986 red wolf 10(j) rule after 1995.

applies here, Plaintiff's brief impermissibly ignores the heightened level of deference afforded to the Service when denying a petition pursuant to 5 U.S.C. § 555(e). As noted above, while the APA standard controls review of an agency's denial of a petition for rulemaking, it is applied in a highly deferential manner through extremely limited judicial review. *See Massachusetts*, 549 U.S. at 527-28. Thus, the question for the Court is not whether the Service's decision to decline to revise the red wolf 10(j) rule was arbitrary and capricious, as Plaintiff frames the issue, but whether the Service's denial of Plaintiff's petition complied with the APA's requirement to provide "a brief statement of the grounds for denial." 5 U.S.C. § 555(e); *see also NLRB*, 834 F.2d at 196 (review of petition denial is limited to "narrow issues as defined by the denial of the petition for rulemaking").

By extension, Plaintiff also attempts to erroneously conflate the obligations of the Service at the time a 10(j) rule is promulgated with what is required of the Service when denying a petition to revise such rule. DE 28 at 14-15. Plaintiff's criticisms of the Service's petition denial rely almost entirely on ESA 10(j)(2)(B), which specifically states that "*[b]efore* authorizing the release" of and experimental population under Section 10(j), the Service must also determine, on the basis of the best available information, whether or not such population is essential to the "continued existence" of the species. 16 U.S.C. § 1539(j)(2)(B) (emphasis added). In other words, Section 10(j) requires the Service to make an essentiality designation at the time of the experimental population's establishment, based on the best available science at that time. Plaintiff, however, wrongly argues that those same statutory requirements apply to the agency's response to Plaintiff's petition for rulemaking pursuant to 5 U.S.C. § 553(e). DE 28 at 14-16. But, as explained in its petition denial, the Service is "not required to revisit the essentiality determination" where it is "not authorizing the release of any population of an endangered

species outside the current range of such species." FWS000177 (citing 16 U.S.C. § 1539(j)(2)(A), (B)). As such, the Service properly relied on its original essentiality determination in the red wolf 10(j) rule when it declined Plaintiff's request to revisit that determination. *See Ark Initiative v. Tidwell*, 749 F.3d 1071, 1078 (D.C. Cir. 2014) (holding that the Forest Service "responded appropriately" to a petition to revise a rule with a "brief statement resting on the final rule's rationale").

Plaintiff also relies on two district court decisions, DE 28 at 17-18, but that argument suffers the same flaw, as both of those cases deal with fundamentally different agency actions and legal standards. In *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, the court reviewed a challenge to a 2015 ESA Section 10(j) rule designating a non-essential experimental population for the black-footed ferret. No. 21-2864 (RDM), 2024 U.S. Dist. LEXIS 159398, at *1 (D.D.C. Sep. 5, 2024). The 2015 10(j) rule in that case preceded the release of a new experimental black-footed ferret population, and thus the Court explained that "'*before* authorizing release'" of that population, the Service was required to designate the population as essential or non-essential pursuant to the standards outlined in Section 10(j) and its implementing regulations. *Id.* at *10-11 (quoting 16 U.S.C. § 1539(j)(2)(B)) (emphasis added). And in *Center for Biological Diversity v. Jewell*, the Service revised a 10(j) rule to authorize the release of an experimental population of Mexican wolves in a new area outside of the current range of the species. No. CV-15-00019-TUC-JGZ (l), 2018 U.S. Dist. LEXIS 56436, at *63-64 (D. Ariz. Mar. 31, 2018). The court in *Jewell* reasoned that because Section 10(j) requires the Service to perform an essentiality determination of an experimental population "prior to authorizing" release of such population "outside the current range" of  the species, and because the 10(j) rule revisions at issue expanded the experimental population area, this was a new release outside the current range and the

11

Service was required to perform a new essentiality determination under 16 U.S.C. § 1539(j)(2)(A)-(B). *Id.* at \*59. Neither of the agency actions evaluated in those cases are present here, as the Service has not promulgated a new 10(j) rule nor has the Service authorized the release of red wolves into an area outside the species' current range as articulated in the existing regulation. Thus, the obligations of the Service and legal standard in *Guardians* and *Jewell* do not apply in this case.

In any event, as explained above, when an agency denies a petition for rulemaking, the agency is only required to provide brief, reasoned explanation for such denial pursuant to 5 U.S.C. § 555(e). Here, the Service clearly complied with the APA when it explained the significance of the captive red wolf population to the survival of the species in the wild as articulated in its original designation of the ENC RWP. FWS000177. The Service also described the benefits of the management flexibilities resulting from the non-essential status in obtaining public support for the ENC RWP and ultimately red wolf recovery. FWS000178. As such, the Service's response to Plaintiff's petition "clearly indicate[d] that it has considered the potential problem identified in the petition and provide[d] a 'reasonable explanation as to why it cannot or will not exercise its discretion' to initiate rulemaking." *Compassion Over Killing v. U.S. FDA*, 849 F.3d 849, 857 (9th Cir. 2017) (quoting *Massachusetts*, 549 U.S. at 533). Nothing more was required of the agency, and the Court should reject Plaintiff's attempt to hold the Service to an improperly heightened standard.

**C.    The Service reasonably relied on the Service's previous consideration of the captive population of red wolves in its 1986 essentiality determination when it denied Plaintiff's petition.**

In its petition denial, the Service primarily relied on the 1986 ENC RWP Final Rule to explain its reasoning for why it declined to revise the ENC RWP's essentiality determination. FWS000177. The Service explained that at the time the red wolf 10(j) rule was promulgated, it

12

designated the ENC RWP as non-essential in part because "the species was secured in captivity such that the population was not essential to the species' continued existence." *Id.* (citing 51 Fed. Reg. 41791 (Nov. 19, 1986)). While this reliance on the Service's own long-standing regulations certainly meets the required standard, Plaintiff argues that the Service's reading of its own regulations is wrong. Specifically, Plaintiff criticizes the Service's reasoning that the red wolf is "secured in captivity," arguing that the regulatory definition of "essential" precludes the Service from even considering the red wolf captive population when assessing whether to classify an experimental population as essential. DE 28 at 14.

To start, much of Plaintiff's reasoning for this argument again relies on its assertion that the Service's designation of the ENC RWP as non-essential was improper at the time the red wolf 10(j) rule was initially promulgated in 1986. *Id.* at 14-15. But as explained above, this attempt to challenge the adequacy of the 1986 essentiality designation is time-barred, as the present lawsuit was brought nearly 40 years after promulgation of the final red wolf 10(j) rule. *See supra* Argument I.A. The Court should decline to consider Plaintiff's attacks on the Service's 1986 essentiality determination when evaluating the Service's petition denial.

If the Court does choose to reach the issue, it should reject Plaintiff's argument. Plaintiff fundamentally misunderstands the regulatory definition of "essential" and the significance of captive populations in the context of ESA Section 10(j). Plaintiff's myopic focus on the phrase "in the wild" in 50 C.F.R. § 17.80(b) ignores that a vital purpose of the captive population is the ability to use it as a source for reintroductions of red wolves *into the wild*. Thus, the Service expressly and properly contemplated the significance of captive populations when it initially promulgated the regulatory definition of "essential." 49 Fed. Reg. at 33888 (explaining that "[a]n 'essential' experimental population will be a special case, not the general rule" because "there

can be situations where . . . individuals can be removed to provide a donor source for reintroduction without creating adverse impacts" and that "this is especially true if captive propagation efforts are providing individuals for release into the wild").

In applying these regulations to the ENC RWP, the Service originally designated the population as non-essential in part "because the species [was] fully protected in captivity . . . and all animals released into the wild [could] be quickly replaced through captive breeding[.]" 51 Fed. Reg. at 41794. Contrary to Plaintiff's assertions, the absence of captive populations from the text of the definition of "essential" does not equate to an implied prohibition from contemplating captive populations at all. In fact, the court in *Guardians* confirmed that consideration of the captive black-footed ferret population "to replace animals lost during introduction" did not conflict with the definition of "essential," agreeing with the Service that this consideration "reflects the very real conservation status of the black-footed ferret," where "loss of the captive population could be catastrophic to the species, whereas the reverse is not true." *Guardians*, No. 21-2864 at *82 (citation omitted). The court further reasoned that consideration of captive populations in essentiality determinations "is consistent with the statutory directive, which requires the FWS to consider whether the experimental 'population is essential to the continued existence of the species.'" *Id.* at *82-83 (quoting 16 U.S.C. § 1539(j)(2)(B)). Accordingly, the Service's consideration of the captive population for the red wolf was proper at the time the experimental population was established, and the Service reasonably relied on that consideration when it declined to revisit the essentiality determination.

### D. The Service did not consider improper factors.

Plaintiff also argues that the Service improperly considered the ability of management flexibilities afforded to the Service through the ENC RWP's "non-essential" designation to generate public support, namely, that those flexibilities are instrumental in obtaining public

14

support of the ENC RWP. DE 28 at 16. But in making this argument, Plaintiff ignores the obvious fact that the Service did not make an "essentiality" determination when it denied Plaintiff's petition. As a result, Plaintiff again wrongly attempts to apply the same standards conferred on the Service before it authorizes the release of an experimental population, *id.* at 17-18, rather than the proper standard afforded to the Service when responding to an APA petition for rulemaking. *See supra* Argument I.A.

Beyond this flaw, Plaintiff's argument is also incorrect in that the Service's petition denial does not indicate that public support resulting from management flexibilities was the basis of the Service's essentiality determination for the ENC RWP as Plaintiff alleges. Rather, the Service explained that it designated the ENC RWP as non-essential when it initially introduced the experimental population because "at that time" – consistent with the standards contained in 16 U.S.C. § 1539(j)(2)(A) and its implementing regulations – the Service determined that the ENC RWP was not essential to the species' continued existence for the reasons discussed above. FWS000177-78. Only thereafter did the Service note that such designation allows for certain management flexibilities that ultimately may be beneficial to red wolf conservation and how this outcome effectuates the original purpose of ESA Section 10(j). *Id.* The Service goes on to explain that the ENC RWP's "non-essential" status does not mean that the population is not important to the Service's red wolf recovery efforts. *Id.* This explanation is in direct response to Plaintiff's concerns in their petition. *See* FWS000126 (Plaintiff's petition alleges that "[b]y deeming that wild population of red wolves as "non-essential," the Service in effect has suggested that recovery of the red wolf in the wild is optional").

Nevertheless, to the extent that Plaintiff asserts that management flexibilities and public support are "irrelevant" when assessing an experimental population, DE 28 at 23, they overstep.

ESA Section 10(j) was specifically intended to address "those instances where the involved parties are reluctant to accept the reintroduction of an endangered or threatened species without the opportunity to exercise greater management flexibility on the introduced population." 49 Fed. Reg. at 33888. And contrary to Plaintiff's assertions, the Service explicitly contemplated consideration of public support when it promulgated its definition of "essential." Specifically, the Service instructed that "[i]n a situation where an affected agency, organization, or individual refuses to cooperate on a reintroduction *because of an essentiality designation*," the Service will have the discretion to "reevaluate the designation and, if the status remains unchanged, may withdraw the proposal" to reintroduce an experimental population altogether. *Id.* at 33888 (emphasis added). Indeed, the court in *Guardians* affirmed that "[i]n this way, the regulations anticipate a more multifaceted analysis than permitted by other sections of the ESA, which focus exclusively on the scientific evidence." *Guardians*, No. 21-2864 at *75; *see also id.* at *76 (holding that "factors such as acceptance by local landowners" are "key considerations" in the viability conservation efforts and that "the [ESA] does not require the [Service] to ignore such realities in its attempts to successfully reintroduce the species"). To ignore the "key" role management flexibilities play in achieving public support for the ENC RWP, as Plaintiff urges, would result in a failure to "consider an important aspect of the problem.[]" *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

Thus, while the Service properly considered the management benefits of the non-essential designation for the ENC RWP in denying Plaintiff's petition, the Service's petition denial did not suggest that those advantages dictated its original essentiality designation. Instead, the Service clarified that its original non-essential determination for the ENC RWP was based on the requirements in Section 10(j) and subsequently described the advantages that culminate from

such determination.

**E.    Plaintiff's petition contained no information in support of its request to reclassify the ENC RWP, and Plaintiff's newly cited studies do not support their claims.**

Finally, while Plaintiff argues that the "best available science" supports their claim, DE 28 at 20, Plaintiff's petition failed to include any new information in support of the request to reclassify the ENC RWP as "essential," as the petition's only reasoning for this request was that "the Service was wrong" when it designated the ENC RWP as essential before the experimental population was established. *See* FWS000125-26. Because the Service properly tailored its petition denial to the issues as defined by Plaintiff's petition, the Service plainly satisfied its requirements pursuant to the APA when responding to a petition for rulemaking and was not required to analyze studies cited in Plaintiff's brief that were not included in – and in fact post-date – Plaintiff's petition. *See WWHT, Inc. v. FCC*, 656 F.2d 807, 817-18 (D.C. Cir. 1981). (For purposes of review of a petition denial the court should look to "the petition for rulemaking, comments pro and con where deemed appropriate, and the agency's explanation of its decision to reject the petition.").

And it is also improper, under basic APA record review principles, for Plaintiff to rely on information that post-dates the challenged agency decision to attack the agency's rationale. *See Ctr. For Biological Diversity v. U.S. Fish and Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (holding that a party may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision."). Here, Plaintiff's brief cites to a study published in 2024, which post-dates the 2023 petition denial by over a year. *See* DE 29 at 20; Defendants' Response to Plaintiff's Statement of Uncontested Facts ¶ 22 ("Defs.' Resp. to Pls. SOF"). Reliance on such information is impermissible.

Even assuming the Service was required to somehow anticipate the concepts presented in

these studies, such studies are either irrelevant to the circumstances in this case or simply do not support Plaintiff's claims. First, Plaintiff implies that the "reduced protections" for wolves referenced in those studies are directly comparable to the protections implemented by the red wolf 10(j) rule. DE 28 at 20. Not so. Two of the studies Plaintiff insisted to add to the administrative record in this case are about periods where governmental agencies allowed intentional, unlimited, and even incentivized hunting of wolf populations. *See* FWS000235-36 (showing the effects of states pursuing "wolf-killing programs," which include "efforts to reduce wolf populations through programs that included incentivized hunting (e.g., bounties) and liberalized (even unlimited) hunting, trapping, and hounding seasons"); FWS000221 (showing effects of periods of legalized hunting of gray wolves in Wisconsin); *see also* Defs.' Resp. to Pls. SOF ¶ 22. Another study cited by Plaintiff refers to periods when lethal take of Mexican wolves was permitted in order to manage a population cap or to manage impacts to wild big game animals. *See* FWS000201-20; Defs.' Resp. to Pls. SOF ¶ 23. In contrast, the red wolf 10(j) rule permits intentional lethal take of red wolves only in defense of human life or the safety of livestock or pets. *See* 50 C.F.R. § 17.84(c); FWS000179; Defs. SOF ¶ 1. In fact, the 2024 study that Plaintiff relies on recommends that in order to increase public acceptance of wolves, policies should mimic the current red wolf 10(j) rule, concluding that "[a] return to policies and studies of targeted removal of confirmed culprits with a record of posing threats to humans and domestic animals seems reasonable." *See* FWS000242. As such, the "reduced protections" for wolves in these studies do not reflect policies regulating the ENC RWP and thus the cited studies are not relevant to the issue at hand.

Moreover, the 2021 study on attitudes toward red wolves does not support Plaintiff's claims – the study concludes that "negative attitudes" of people who "are pushing [the Service]

to loosen ESA protections" are the primary drivers of illegal killings and that resolving this issue will require "support for and communication with residents" and "more targeted interventions." FWS000198-99. As explained above, the Service has demonstrated a clear commitment to implementing such objectives. *See* Defs.' Resp. to Pls. SOF ¶ 24; *see also* Defs.' SOF ¶ 13-14 (explaining that the Service has conducted targeted outreach to landowners close to where red wolves are active and has implemented extensive collaborative conservation efforts through increased community engagement). In any event, the Service, as the expert agency, is in the best position to make these kinds of conclusions and the Court should defer to the Service's expertise. *Ohio Valley Env'tl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (holding that the APA standard of review is highly deferential, with "a presumption in favor of finding the agency action valid" especially in matters involving "complex predictions based on special expertise") (citing *Balt. Gas & Elec. Co.* 462 U.S. at 103).

In sum, the Service reasonably relied on the rationale contained in its 1986 essentiality designation for the ENC RWP and provided a "reasonable explanation as to why it cannot or will not exercise its discretion" to initiate rulemaking in response to Plaintiff's request to reclassify the ENC RWP. *Massachusetts*, 549 U.S. at 533. The Service was not required to go beyond this standard, and Plaintiff's disagreement with the Service's reasoning is not enough to warrant overturning the petition denial. *See DiGiovanni*, 249 Fed. App'x at 844.

## II. The Service reasonably denied revising 50 C.F.R. § 17.84(c)(4)(v).

In addition to its request that the Service revisit the ENC RWP essentiality determination, Plaintiff claims that the Service was required to revise 50 C.F.R. § 17.84(c)(4)(v) based on this Court's decision in *Red Wolf Coal. II. See* DE 28 at 26. But Plaintiff's argument reflects a fundamental misunderstanding of this Court's holding in *Red Wolf Coal. II*, which enjoined the Service's *interpretation* of the red wolf 10(j) rule, not the rule itself. *See Red Wolf Coal. II*, 346

19

F. Supp. 3d. at 812 ("[The Service's] interpretation [of its 10(j) rule] operates against the USFWS' goal to recover the red wolf in the wild"). In that case, the Service was found to be authorizing take of wolves by private landowners under § 17.84(c)(4)(v) without confirming that they are "problem wolves" – wolves that are a threat to life of property – and without first attempting to capture such wolves. *Id.* at 811-12. This Court found that such take authorizations were "issued in conflict with the applicable red wolf 10(j) rule" and that the Service's construction of § 17.84(c)(4)(v) "failed to comply with the plain language of the red wolf l0(j) rule." *Id.* at 812, 813. In addition, this Court found that this interpretation was a "departure" from the Service's previous "long-standing" interpretation of § 17.84(c)(4)(v), which did not "provide for taking or removal of wildlife from private lands in the absence of a problem." *Id.* at 810. Accordingly, this Court permanently enjoined the Service from interpreting § 17.84(c)(4)(v) in a way that allows take without demonstration of a "threat to human safety or the safety of livestock or pets." *Id.* at 815.

 Contrary to Plaintiff's argument, *Red Wolf Coal. II* did not require the Service to revise the red wolf 10(j) rule, nor did that case render any provision of the rule "unlawful." DE 28 at 25-26. Rather, *Red Wolf Coal. II* invalidated the Service's then-current "interpretation and application" of the red wolf 10(j) rule. *Red Wolf Coal. II*, 346 F. Supp. 3d at 814. To that end, Plaintiff's reliance on the Service's revision of the Mexican Wolf 10(j) rule in light of *Jewell*, DE 28 at 24-25, is misplaced; the court in *Jewell* held that the Mexican wolf 10(j) rule was invalid and remanded to the agency for revision, whereas *Red Wolf Coal. II* only invalidated the Service's *interpretation* of the red wolf 10(j) rule without requiring revision of the rule itself. *See Jewell*, 2018 U.S. Dist. LEXIS 56436, at *69 (remanding the 10(j) rule to the Service to remedy the deficiencies identified by the court); *Red Wolf Coal. II*, 346 F. Supp. 3d at 815 (enjoining the

Service's prior application of the specified provision of the red wolf 10(j) rule).

Moreover, Plaintiff's contention that the red wolf 10(j) rule "does not accurately dictate the circumstances when the public can lawfully kill red wolves" is meritless. DE 28 at 24-25. This Court has made clear that the "plain language" of the red wolf 10(j) rule distinctly prohibits "[i]ntentional or willful takes of red wolves . . . unless it is in defense of a person's own life or the lives of others; the animal is in the act of killing livestock or pets; or the take has been authorized by USFWS project personnel after efforts by USFWS to capture the animal have been abandoned, provided that the USFWS project leader has approved of the take in writing." *Red Wolf Coal. II*, 346 F. Supp. 3d at 806 (citing 50 C.F.R. § 17.84 (c)(4)(i), (iii), (v)). Furthermore, the Service's Red Wolf Recovery Program Website also specifies that "[m]anagement of the ENC RWP Red Wolves is conducted in accordance with the 10(j) rule published in 1995, as clarified by relevant court orders" and that "this includes a permanent injunction prohibiting take of Red Wolves either directly or by landowner authorization, without first demonstrating that the Red Wolf is a threat to human safety or the safety of livestock or pets." *See* Defs.' Resp. to Pls. SOF ¶ 27.

Plaintiff's argument that the Service's denial of their request to revise 50 C.F.R. § 17.84(c)(4)(v) may lead to "confusion" and "needless killings" by the public is equally baseless and misleading. DE 28 at 25. Plaintiff's only support for this point is that the North Carolina Administrative Code incorporates the red wolf 10(j) rule by reference, which Plaintiff claims "could" bring about unlawful killings due to confusion among the public and state wildlife management. *Id.* But Plaintiff's attempt to connect the possibility of unlawful take to alleged public confusion about § 17.84(c)(4)(v) lacks clear logic. *Red Wolf Coal. II* only addresses implementation of § 17.84(c)(4)(v), which affects when *the Service* can lawfully authorize

21

landowner take of red wolves under the red wolf 10(j) rule. Plaintiff fails to provide any examples where public confusion about the implementation of § 17.84(c)(4)(v) has resulted in unlawful take nor have they specified how revision of § 17.84(c)(4)(v) would prevent such take.

In sum, Plaintiff's claim that a failure to revise § 17.84(c)(4)(v) of the red wolf 10(j) rule may result in unlawful take lacks merit and thus the Service reasonably declined to do so. Plaintiff's assertion that *Red Wolf Coal. II* requires the Service to revise the red wolf 10(j) rule reflects a fundamental misunderstanding of this Court's decision, which enjoined the Service's previous interpretation and application of § 17.84(c)(4)(v), and did not invalidate the text of the rule as Plaintiff's claim. The Service clearly explained in its petition denial that it is no longer implementing the red wolf 10(j) rule in a way that allows take without demonstration of threat to life or property in accordance with *Red Wolf Coal. II*, and thus Plaintiff's concern regarding the implementation of § 17.84(c)(4)(v) as expressed in their petition is no longer warranted. FWS000179. Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment.

## REMEDY

While Defendants disagree that Plaintiff is entitled to any remedy in this case, if the Court were to find in Plaintiff's favor, the only appropriate remedy would be to remand the petition denial to the Service for a new determination. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *see also PPG Indus. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("[W]hen a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943))). Plaintiff's request that the Court order revision of the red

wolf 10(j) rule is wholly inappropriate here, as "[o]rdering a specific remedy" is "inconsistent with the Court's role in reviewing final agency action under the APA[.]" *Harrison v. Kendall*, 670 F. Supp. 3d 280, 295 (E.D. Va. 2023) (citing *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)).

Moreover, should the Court remand the petition finding, the Court should deny Plaintiff's request that the Court set a deadline for the Service's response on remand, as courts have consistently rejected issuing "specific actions" on remand. *See Kantor v. Becerra*, Civil Action No. DKC 20-2475, 2021 U.S. Dist. LEXIS 77676, at *7 (D. Md. Apr. 22, 2021); *see also Env't Def. Fund v. Administrator, U.S. EPA*, 898 F.2d 183, 190 (D.C. Cir. 1990) (declining petitioner's request to impose a deadline on an agency for further action on remand). If the Court is inclined to order a new petition response by a date certain, Defendants respectfully request that the Court allow an opportunity for the Service to evaluate staffing and budget constraints and present any such relevant evidence to the Court before equitable relief is fashioned.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.


Dated: January 24, 2025                     Respectfully Submitted,

                                            LISA L. RUSSELL
                                            Deputy Assistant Attorney General
                                            S. JAY GOVINDAN
                                            Section Chief
                                            BRIDGET K. McNEIL
                                            Assistant Section Chief

                                            */s/ Bonnie Ballard*
                                            BONNIE BALLARD
                                            Trial Attorney

United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
bonnie.m.ballard@usdoj.gov | (202) 305-1513
Fax: (202) 305-0275

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.2(f), the undersigned counsel certifies that this Memorandum contains 7,402 words, excluding the parts that do not count towards the limitation as provided in Local Rule 7.2(f)(3). In making this certification, I have relied on the word count of the word-processing system used to prepare the brief.

*/s/ Bonnie Ballard*
BONNIE BALLARD

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ Bonnie Ballard
BONNIE BALLARD